1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

SOUTHERN DISTRICT OF CALIFORNIA

11

| | | |
|---|---|---|
| 12 | SCRIPPS HEALTH, a California corporation, ) | Civil No. 12cv252 AJB (DHB) |
| 13 | Plaintiff, ) | **ORDER DENYING DEFENDANTS'** |
| 14 | v. ) | **MOTION TO DISMISS PLAINTIFF'S** |
| | ) | **FIRST AMENDED COMPLAINT AND** |
| 15 | SCHALLER ANDERSON, LLC, an Arizona ) | **DENYING DEFENDANTS' MOTION** |
| | limited liability company; AETNA LIFE ) | **TO STRIKE** |
| 16 | INSURANCE COMPANY, a Connecticut ) | |
| | corporation; and DOES 1 through 15, ) | [Doc. No. 6] |
| 17 | inclusive, ) | |
| | Defendants. ) | |
| 18 | _____ ) | |

19      Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended

20  Complaint and Motion to Strike.  (Doc. No. 6.)  For the reasons set forth below, the Court DENIES

21  Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and DENIES Defendants' Motion

22  to Strike.

23                                    ***Background***

24      Plaintiff Scripps Health is a healthcare delivery network with a self-funded employee health

25  benefit plan ("the Plan").  (Compl. at ¶¶ 1, 8.)  At all times relevant, Defendant health insurance

26
27
28

companies Schaller Anderson, LLC ("SAC") and Aetna Life Insurance Company ("Aetna") (collec-tively "Defendants") administered claims as Plaintiff's health benefit plan administrator.[1]

Plaintiff first entered into an Administrative Services Agreement ("SAC Agreement") with SAC in 2002, in which SAC agreed to provide administrative services to the Plan.  (*Id.* at ¶ 14.)  In 2007, Aetna acquired SAC.  (*Id.* at ¶ 20.)  In April 2008, Plaintiff elected to use the Aetna Signature Adminis-trators PPO as its provider network, allowing access to Aetna's discounted rates with the non-Scripps, Aetna-contracted providers ("Wrap Network").  (*Id.* at ¶¶ 26, 27.)  Plaintiff contends that, during the transition from SAC to Aetna, Defendants never represented to Plaintiff that they intended to eliminate the Wrap Network.  (*Id.* at ¶ 30.)  In fact, Plaintiff entered into an amendment to the SAC Agreement, effective January 1, 2009, which extended the term of the SAC Agreement through at least January 31, 2009, and provided that SAC agreed to cooperate with the transition of services to a new administrator, Aetna, who was in fact the new owner of SAC.  (*Id.* at ¶¶ 38, 39.)  Between January 31, 2009 and September 15, 2009, Plaintiff contends that Defendants administered the Plan "without a written contract in place, as though the SAC contract never ended."  (*Id.* at ¶ 45.)  On September 15, 2009, Plaintiff entered into an Administrative Services Agreement ("Aetna Agreement") with Aetna, which stated that no discounts would be given to providers outside of the Aetna network, but implying that discounts would still be available for services provided by in-network providers.  (*Id.* at ¶ 49.)  The Aetna Agreement terminated effective December 31, 2009.  (*Id.* at ¶ 51.)

Plaintiff claims that, according to a performance assessment audit of Defendants' work for Plaintiff for the year 2009, Defendants failed to apply Aetna discounted contractual rates to the Wrap Network for claims effective January 1, 2009.  (*Id.* at ¶¶ 52-53.)  As a result, Plaintiff asserts that Defendants overpaid an estimated $4.4 million[2] on Plaintiff's employee health claims for providers outside of the Aetna network.  (*Id.* at ¶¶ 54, 61.)

---

[1] Plaintiff contends that "the SAC and Aetna contracts overlap in time, employees and management of SAC and Aetna are similar, and representations were made to [Plaintiff] by both SAC and Aetna at all times relevant to this action, leaving the distinctions between SAC and Aetna unclear." (Compl. at ¶ 2.)

[2] Plaintiff asserts, however, that it was unable to determine the exact amount of the alleged overpayments because Defendants allegedly refused to provide Mercer, the independent company that conducted the performance assessment audit, access to the negotiated rate information for the Wrap Network claims.  (Compl. at ¶ 55.)

12cv252

1   On January 31, 2012, Plaintiff brought this action against Defendants, alleging that they were the

2   administrators of Plaintiff's self-funded employee health benefit plan and had a fiduciary duty to

3   Plaintiff under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et*

4   *seq.*  Plaintiff additionally brought ten state common law and statutory claims against Defendants: (1)

5   common law breach of fiduciary duty; (2) breach of written contract (SAC contract); (3) breach of

6   written contract (Aetna contract); (4) breach of implied contract; (5) intentional misrepresentation; (6)

7   negligent misrepresentation; (7) unfair business practices; (8) negligence; (9) estoppel; and (10)

8   declaratory relief.

9   By the present motion, Defendants seek to dismiss and strike Plaintiff's First Amended

10  Complaint.  (Doc. No. 6.)  Plaintiffs filed an Opposition on March 16, 2012, and Defendants filed a

11  Reply on March 27, 2012.

12  ***Legal Standard***

13  **A.    *Motion to Dismiss***

14  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a

15  court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief

16  may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court only reviews the

17  contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences

18  in favor of the nonmoving party.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations

19  omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations,

20  rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

21  *v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual

22  content that allows the court to draw the reasonable inference that the defendant is liable for the

23  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24  **B.    *Motion to Strike***

25  Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion,

26  "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

27  matter." Fed. R. Civ. P. 12(f) (2009).  Motions to strike "are generally disfavored because they are often

28  used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales*

3

12cv252

1  *v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not

2  be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the

3  litigation."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

4  <u>***Discussion***</u>

5      Defendants request that the Court dismiss Plaintiff's second through eleventh causes of action

6  and strike Plaintiff's claim for punitive damages.  As explained below, the Court finds that Plaintiff's

7  state-law claims are not preempted by ERISA, and thus both Defendants' motion to dismiss and motion

8  to strike are denied.

9  ***A.    Whether Plaintiff's State-Law Causes of Action are Preempted Under ERISA***

10      Through ERISA, Congress intended to provide a uniform body of federal law governing

11  employee benefit plans.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).  To accomplish this,

12  ERISA contains two sections with "powerful preemptive force."  *Cleghorn v. Blue Shield of Cal.*, 408

13  F.3d 1222, 1225 (9th Cir. 2005).  There are two strands of ERISA preemption: (1) "complete preemp-

14  tion" under § 502(a) of ERISA, 29 U.S.C. § 1132(a); and (2) "conflict preemption" under § 514(a) of

15  ERISA, 29 U.S.C. § 1144(a).  *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-

16  45 (9th Cir. 2009).  Complete preemption applies where a complaint asserts a state law cause of action

17  that falls within the scope of one of the civil enforcement provisions of ERISA § 502(a).  *See Toumajian*

18  *v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998).  "Complete preemption under § 502(a) is really a

19  jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain

20  instances where Congress intended the scope of a federal law to be so broad as to entirely replace any

21  state-law claim."  *Id.* (internal quotations and brackets omitted).

22      In contrast, the conflict preemption provision of ERISA preempts state laws "insofar as they may

23  now or hereafter *relate to* any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).  The

24  Supreme Court cautioned that "relate to" should not be "taken to extend to the furthest stretch of its

25  indeterminacy."  *N.Y. Conf. Of Blue Cross v. Travelers*, 514 U.S. 645, 655 (1995).  Rather, courts

26  should look to the Congressional objectives of ERISA as a guide to the scope of state law that Congress

27  understood would be preempted.  *Id.* at 656.  Thus, although ERISA's express preemption is "deliber-

28  ately expansive," *Pilot Life Ins.*, 481 U.S. at 46, the preemption does not occur if the state law has "only

12cv252

1   a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general

2   applicability." *Dishman v. Unum Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir. 2001) (citing

3   *Travelers*, 514 U.S. at 661) (internal quotations omitted) .

4         Defendants argue that Plaintiff's second through eleventh causes of action should be dismissed

5   because they are preempted by ERISA.  We address both types of preemption and conclude that ERISA

6   does not preempt Plaintiff's state-law claims.

7         ***1.    Conflict Preemption Under Section 514(a) of ERISA***

8         Defendants argue that Plaintiff's state-law causes of action are preempted by Section 514(a)

9   because their claims "relate to" Plaintiff's employee health benefit plan.  For purposes of Section

10  514(a), a common law claim "relates to" an employee benefit plan governed by ERISA "if it has a

11  connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139

12  (1990) (citation omitted).  Sufficient "reference" exists to support preemption if a claim is premised on

13  the existence of an ERISA plan, and the existence of the plan is essential to the claim's survival.  *See id.*

14  at 140.  The Ninth Circuit has further articulated this standard, holding that a claim "falls under

15  ERISA's far-reaching preemption clause" when the "underlying theory of the case revolves around the

16  denial of benefits." *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1131 n.2 (9th Cir. 1992).  In

17  applying this standard, courts in the Ninth Circuit have consistently held that ERISA preempts

18  common-law contract claims arising from employee benefit plans.  *See, e.g.*, *Kanne v. Conn. Gen. Life*

19  *Ins. Co.*, 867 F.2d 489, 494 (9th Cir. 1988) (finding that ERISA preempted employee's claim against

20  insurer for breach of contract because it was premised on improper processing of benefits claim);

21  *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1253 (9th Cir. 1989) (holding that ERISA pre-

22  empted insured's action against insurers for breach of covenant of good faith and fair dealing because it

23  was premised on the rescission of the group insurance policy).

24        This lawsuit, however, is not about the denial of benefits or breach of an employee health benefit

25  plan.  Rather, Plaintiff is suing Defendants as the administrator of Plan for "breaching the [administra-

26  tive services agreements] and fail[ing] to pay claims properly."  (Pl.'s Opp'n at 7.)  Plaintiff's state-law

27  claims are traditional state claims that are only tangentially related to the administration of the employee

28  benefit plan.  *See Dishman*, 269 F.3d at 984; *see also Mackey v. Lanier Collection Agency & Serv., Inc.*,

1  486 U.S. 825, 833 (1988) (stating that ERISA does not preempt "run-of-the-mill state-law claims," even

2  though such suits obviously affect and involve the plan).

3        More importantly, Plaintiff's state-law causes of action cannot be considered the type of claims

4  that Congress intended to preempt in enacting the ERISA statute.  *See Cal. Div. Of Labor Standards*

5  *Enforcement v. Dillingham Const. N.A., Inc.*, 519 U.S. 316, 323 (1997) (concluding that the court must

6  examine objectives of ERISA and "nature of the effect" of state law on ERISA plans to determine if

7  state law is preempted).  The Ninth Circuit has recognized that "'[t]he basic thrust of the preemption

8  clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration

9  of employee benefit plans.'"  *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212,

10  1216 (9th Cir. 2000) (quoting *Travelers*, 514 U.S. at 657).  "The Court has established a presumption

11  that Congress did not intend ERISA to preempt areas of 'traditional state regulation' that are 'quite

12  remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary

13  responsibility, and the like.'"  *Id.* (quoting *Dillingham*, 519 U.S. at 330).  Here, the state law claims

14  Plaintiff raises fall outside the three categories of state laws that the Ninth Circuit recognized as areas

15  Congress intended to preempt under ERISA.  *See Ariz. State Carpenters Pension Trust Fund v.*

16  *Citibank*, 125 F.3d 715, 723 (9th Cir. 1997) (citing *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1468

17  (4th Cir. 1996)); *see also Travelers*, 514 U.S. at 658-59.  The state-law claims do not address the

18  employee benefit structure or the administration of benefits; they are not aimed at binding employers or

19  plan administrators to particular practices, nor do they preclude uniform administrative practices; and

20  they are not an alternative enforcement mechanism for employees to obtain benefits.  *See id.*  Therefore,

21  Plaintiff's state-law claims are not preempted by Section 514(a).

22        As an additional argument, Plaintiff contends that its claims for intentional misrepresentation,

23  negligent misrepresentation, unfair business practices, negligence, and estoppel, all of which relate to

24  Defendants' representations regarding the Wrap Network, occurred before the parties entered into the

25  Aetna Agreement and therefore "are not interconnected with the administration or management of the

26  Plan." (Pl.'s Opp'n at 9 n.2, 10.)  Instead, Plaintiff asserts that the state-law causes of action are based

27  on pre-plan misrepresentations of how Aetna would price claims.  (*Id.*)  Plaintiff further contends that its

28  claims for breach of fiduciary duty, breach of written contract (SAC Agreement), breach of written

1  contract (Aetna Agreement), and breach of implied contract, arise from Defendants' alleged breach of

2  the administrative services agreements and not the ERISA plan itself.  (*Id.* at 10.)

3       In reviewing whether ERISA preempts state-law negligent or misrepresentation claims, courts in

4  the past generally noted the significance of the timing of the conduct giving rise to the state law claims

5  at issue.  *See, e.g.*, *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1352–53 (11th Cir. 1998)

6  (noting that the insurer had assumed its ERISA fiduciary role and the plan had been established prior to

7  the alleged misrepresentations); *Coyne*, 98 F.3d at 1471 (noting the defendants' alleged misconduct

8  occurred before they began to act in their capacities as ERISA fiduciaries).  More recently, however,

9  courts have held that ERISA preemption does not turn on the timing of the alleged misrepresentation,

10  but rather the true nature of the issues underlying the claim.  *See e.g.*, *Hobson v. Robinson*, 75 Fed.

11  App'x 949, 954 (5th Cir. 2003) (noting that it is the extent to which a claim "relates to" ERISA that

12  determines preemption); *see also Lion's Volunteer Blind Indus., Inc. v. Automated Grp. Admin., Inc.*,

13  195 F.3d 803, 808 (6th Cir. 1999).  For the reasons discussed above, Plaintiff's state-law causes of

14  action have only a tenuous connection to the employee benefit plan and they cannot be considered the

15  type of claims that Congress intended to preempt.

16       Accordingly, Plaintiff's second through eleventh causes of action are not expressly preempted

17  under ERISA.[3]

18       **2.**     ***Complete Preemption Under Section 502(a) of ERISA***

19       Having determined that the Plaintiff's state-law claims are not expressly preempted under

20  ERISA, we next address whether Plaintiff's second through eleventh causes of action are completely

21  preempted under Section 502(a) of ERISA.

22       In *Aetna Health Inc. v. Davila*, the Supreme Court held that a two-part test applies to determine

23  whether a state law cause of action is completely preempted by ERISA.  *Aetna Health Inc. v. Davila*,

24  542 U.S. 200 (2004).  "Under *Davila*, a state-law cause of action is completely preempted if (1) an

25

26       [3] Although the parties do not specifically discuss the "refers to" prong of the "relates to" test, we
    also conclude that Plaintiff's state-law claims are not preempted under this prong.  The state law claims

27  do not "act[] immediately and exclusively upon ERISA plans" and "the existence of ERISA plans is
    [not] essential to the [state] law's operation."  *See Dillingham*, 519 U.S. at 3245; *see also Ariz. State*

28  *Carpenters Pension Trust Fund*, 125 F.3d at 724 n.4 (holding that state law negligence claims were not
    preempted under the "refers to" prong).

12cv252

1   individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2)

2   where there is no other independent legal duty that is implicated by a defendant's actions." *See Marin*

3   *Gen. Hosp.*, 581 F.3d at 946 (quoting *Davila*, 542 U.S. at 210) (internal quotations and brackets

4   omitted).  "A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are

5   satisfied." *Id.* at 947.

6                    ***a.***      ***Ability to Assert Rights under ERISA § 502(a)(1)(B)***

7            Under the first consideration from *Davila*, Plaintiff's state-law causes of action are not

8   preempted because they could not have been brought under ERISA § 502(a)(1)(B).  These are not a

9   beneficiary's claims.  Moreover, Plaintiff is not suing "to recover benefits due to him under the terms of

10  his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under

11  the terms of the plan," which is precisely all § 502(a)(1)(B) provides.  *See Blue Cross of Cal. v.*

12  *Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999).  Instead, Plaintiff is

13  seeking damages arising from Defendants' alleged breach of the administrative services agreements and

14  their failure to pay claims properly, which are wrongs not within the scope of § 502(a)(1)(B).  There-

15  fore, the first prong of the *Davila* preemption test has not been satisfied.

16                   ***b.***      ***Independent Legal Duty***

17           The inquiry under the second prong of *Davila*—whether there is an independent legal duty that

18  is implicated by defendant's actions—also undercuts finding that Plaintiff's state-law claims are

19  completely preempted.  *See Marin Gen. Hosp.*, 581 F.3d at 950.  Where a healthcare provider predicates

20  its suit against an insurer on an agreement other than the employee health benefit plan, its claims are not

21  preempted.  *See id.* at 951 ("We conclude that the Hospital's state-law claims based on its alleged oral

22  contract with [the plan administrator] were based on an independent legal duty, and that the Hospital's

23  claims therefore do not satisfy the second prong of *Davila*."); *see also Meadows v. Emp'rs Health Ins.*,

24  47 F.3d 1006, 1008, 1010 (9th Cir. 1995) (finding that because the third-party healthcare provider

25  brought misrepresentation and estoppel claims that were independent of those which the patient might

26  have had, the claims were not completely preempted).

27           In the instant case, Plaintiff's claims are based on contractual obligations resulting from the

28  administrative services agreements, not the terms of the ERISA plan.  (Compl. ¶¶ 16, 47.)  As such,

12cv252

1    Plaintiff has alleged Defendants' actions implicate a legal duty independent of the Plan.  In response,

2    Defendants contend that even though there is a contract, the alleged damages result from Defendants'

3    administration of the Plan.  (Defs.' Reply at 5.)  However, this contention lacks merit.  Whether

4    Plaintiff's state-law claims "relate to" the Plan is insufficient for complete preemption purposes.  *See*

5    *Marin Gen. Hosp.*, 581 F.3d at 950-51 (stating that whether claims "relate to" an ERISA plan is relevant

6    only to conflict preemption).  Instead, "[t]he question under the second prong of *Davila* is whether the

7    complaint relied on a legal duty that arises independently of ERISA."  *Id.*  Because the Complaint

8    alleges the existence of such an independent obligation, the Court finds that the second prong of *Davila*

9    has not been satisfied.

10          Therefore, under both *Davila* prongs in the test for complete preemption, Plaintiff's state-law

11   causes of action survive.  Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's

12   second through eleventh causes of action.

13   ***B.      Whether Plaintiff's Claim for Punitive Damages is Proper***

14          In addition to the preemption issue discussed above, Defendants have moved to strike Plaintiff's

15   prayer for punitive damages under ERISA, arguing that punitive damages are not recoverable in ERISA

16   actions.  *See, e.g.*, *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (holding that punitive

17   damages are unavailable to individual beneficiaries suing pension plan under ERISA § 409(a), 29

18   U.S.C. § 1109(a)); *Sokol v. Bernstein*, 803 F.2d 532, 537-38 (9th Cir. 1985), abrogated on other grounds

19   by *Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889 (9th Cir. 1990) (holding that punitive damages

20   are not available to individual beneficiaries for breach of fiduciary duty under ERISA § 502(a)(3), 29

21   U.S.C. § 1132(a)(3)).  Plaintiff contends that the cases cited by Defendants are not controlling in this

22   case as they hold only that awards of punitive damages are unavailable to individual beneficiaries and

23   do not reach the question of awards of punitive damages sought by a plan against a fiduciary.  This

24   Court finds Plaintiff's arguments compelling.

25          The Supreme Court has not yet ruled on the general availability of punitive damages under

26   ERISA.  The Court in *Russell* held that Congress did not intend individual recovery of damages under §

27   409(a) but, anticipating the distinction urged upon the Court by the plaintiff in this case, specifically

28   reserved the question whether or not § 409(a) allows for extra-contractual damage awards when the plan

1  itself is the plaintiff. *Russell*, 473 U.S. at 144 n.12.  Moreover, even if this Court were to agree with

2  Defendants that punitive damages are not recoverable in this case as a matter of law, "Rule 12(f) does

3  not authorize district courts to strike claims for damages on the ground that such claims are precluded as

4  a matter of law." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

5       Furthermore, Defendants' argument to strike punitive damages in Plaintiff's claim for intentional

6  misrepresentation is premised upon its earlier contention that all state claims are preempted by ERISA

7  and, thus, properly dismissed.  As discussed above, Plaintiff's state-law causes of action are not

8  preempted, and therefore Defendants' motion to strike is denied.

9  <u>***Conclusion***</u>

10       For the reasons set forth above, the Court DENIES Defendants' Motion to Dismiss Plaintiff's

11  First Amended Complaint and DENIES Defendants' Motion to Strike.

12  IT IS SO ORDERED.

14  DATED:  June 22, 2012

15   

16                          Hon. Anthony J. Battaglia
                        U.S. District Judge